(No. 22790.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HARRY SEREVINO, Plaintiff in Error.

*Opinion filed February 21, 1935.*

JAMES M. BURKE, and GEORGE M. CRANE, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, HENRY E. SEYFARTH, and JOHN T. GALLAGHER, of counsel,) for the People.

Mr. JUSTICE ORR delivered the opinion of the court:

By this writ of error to the criminal court of Cook county Harry Serevino seeks reversal of a judgment sentencing him to the penitentiary for life. He was declared by a jury to have killed Martin Knudson, a Chicago policeman, on February 5, 1932.

Under police protection a Chicago newspaper maintained a distribution and collection station on North Trumbull avenue. On February 5 Knudson was there on duty when three armed men endeavored to rob the place. There was an exchange of shots and the robbers fled, one with fatal wounds. Knudson was shot twice and died after reaching a hospital. The three robbers were members of a gang of four, composed of Serevino, Eddie Fertag, Tony Bolaro and James Stewart. The latter died of his wounds. Upon the death of Stewart the gang members separated. Serevino first went to Florida and then to New York City, where he was arrested.

At different times Serevino told of his participation in the attempted robbery. On the trial, when the People endeavored to introduce his written statement in evidence as his confession, defendant interposed an objection that the statement was wrenched from him by threats or intimidation. After hearing evidence on this subject the trial court let the confession go to the jury. This alleged error is the

chief one assigned. Serevino testified that he was treated with consideration by the New York and Chicago police with one exception—the first night he spent in Chicago on his return. He testified that he was placed in a cell shortly before midnight and given a blanket by the officer who returned him from New York; that at midnight Lieutenant O'Brien came on duty; that O'Brien proceeded to thoroughly curse him and take the blanket from him; that O'Brien told him he would kill him unless he made a full confession before he (O'Brien) returned to work the following midnight. O'Brien went off duty at 8:00 o'clock in the morning. A few hours after that time Serevino made the statement introduced in evidence. The officer who gave him the blanket asked him that morning what became of it, and Serevino replied that O'Brien took it away. A sharp conflict of evidence is apparent here, for Serevino insisted he told this officer and another just what O'Brien said he would do if he did not confess. The two officers deny this and both say that Serevino did not give any particulars of the alleged threat. The statement was given by Serevino in the presence of two police officers and an assistant State's attorney, none of whom is charged with threatening or mistreating him.

For some undisclosed reason the People did not produce Lieutenant O'Brien as a witness to refute the story of intimidation. Because of this, counsel for Serevino argue that his tale of threats should be believed since not denied. In this the evidential worth of Serevino's testimony is too highly evaluated. In his behalf it is also more than insinuated that the reason for his statement was the promise of a light sentence and an easy job in prison. Two such dissimilar reasons cannot easily be reconciled. Each of these reasons detracts much from the other. The vice of the two is the sum of their improbabilities. The People produced sufficient evidence to warrant a conviction, and under such circumstances this court will not place its judg-

ment before that of the jury. The chief duty of this court on review of a criminal case is to determine whether the defendant received a fair trial and whether his conviction is based upon evidence establishing his guilt beyond a reasonable doubt. *People* v. *Stavrakas,* 335 Ill. 570; *People* v. *Spino,* 351 id. 83.

Complaint is made that certain prejudicial facts came to the knowledge of the jury because of improper questions asked by the People. It is said that even though the evidence warranted a finding of guilt after ignoring that which was improper, the case should nevertheless be reversed because the jury fixed the punishment and this improper evidence might have influenced it in that respect. The two detectives who arrested Serevino in New York, when testifying to conversations with him, related that he said that "stick-ups" were his "racket," and that on the night of the shooting the gang was traveling in a "hot car." However, the confession of Serevino contained a statement that one of the gang possessed a master key for a Chevrolet automobile. Another matter objected to concerned a statement by the widow of the slain officer that she was the mother of two children. This statement could not work the damage attributed to it. The other remarks complained of were utterances of Serevino which came voluntarily from him. When objection was made and sustained to these statements the court cautioned the jury to disregard them after they had been stricken.

Serevino received a fair trial. His rights under the law were not impaired. A robbery was planned and perpetrated in cold-blooded fashion, with the aid of guns and in utter disregard of law and life. The penalty imposed by the jury was not at all disproportionate to the offense.

The judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*